**"O"**

UNITED  STATES  DISTRICT  COURT

FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA

| | |
|---|---|
| DEALERTRACK, INC., | )    CASE NO. CV 06-2335 AG (FMOx) |
|               Plaintiff, | ) |
| | )    **ORDER GRANTING MOTION FOR** |
|     v. | )    **SUMMARY JUDGMENT OF** |
| | )    **INVALIDITY OF '427 PATENT** |
| DAVID L. HUBER; FINANCE | ) |
| EXPRESS, LLC; JOHN DOE | ) |
| DEALERS, | ) |
| | ) |
|               Defendants. | ) |
| _____ | ) |

Defendants Finance Express, LLC ("Finance Express") and RouteOne, LLC ("RouteOne") (collectively, "Defendants") have filed a Motion for Summary Judgment of Invalidity as to U.S. Patent 7,181,427 ("Motion"). Because the Court finds that the '427 Patent is directed to unpatentable subject matter under 35 U.S.C. § 101 and the recent case of *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008), Defendants' Motion is GRANTED.

## BACKGROUND

Plaintiff DealerTrack, Inc. ("DealerTrack") asserts that Finance Express and RouteOne

1   have infringed three of DealerTrack's patents, including U.S. Patent 7,181,427 (the "'427

2   Patent").  The '427 Patent, which was issued on February 20, 2007, is entitled "Automated

3   Credit Application System."  According to the Abstract, the patent is directed to a "computer

4   based credit application processing system [that] provides a graphical user interface, automatic

5   software update downloading, lender to lender routing of credit applications, and integration

6   with in-house finance and insurance systems and third party data entry facilities, among other

7   features."  The background section of the patent explains that before the '427 Patent, most

8   processes for obtaining credit and financing of major consumer purchases had been done

9   manually.  (Hadley Decl. Ex. 1 at 1:23-25.)  With the invention of the '427 Patent, the "entire

10  indirect loan application processing, routing, and funding" is placed in an environment with

11  graphical user interfaces.  (*Id.* at 1:48-2:56.)

12        DealerTrack asserts that Defendants have infringed on claims 1, 3, and 4 of the '427

13  Patent.  Claim 1, an independent claim, recites a "computer aided method" of managing a credit

14  application, consisting of the following steps:

15

16        [A]    receiving credit application data from a remote application

17               entry and display device;

18        [B]    selectively forwarding the credit application data to remote

19               funding source terminal devices;

20        [C]    forwarding funding decision data from at least one of the

21               remote funding source terminal devices to the remote

22               application entry and display device;

23        [D]    wherein the selectively forwarding the credit application data

24               step further comprises:

25        [E]    sending at least a portion of a credit application to more than

26               one of said remote funding sources substantially at the same

27               time;

28        [F]    sending at least a portion of a credit application to more than

2

one of said remote funding sources sequentially until a

finding [*sic*] source returns a positive funding decision;

[G]    sending . . . a credit application . . . after a predetermined time

. . . ; or;

[H]    sending the credit application from a first remote funding

source to a second remote finding [*sic*] source . . . .

Claim 3 recites the method of Claim 1, with the additional steps of "aggregating data for a dealer having a plurality of dealerships located at different locations" and "providing the dealer with a consolidated report using the aggregated data." Claim 4 recites the method of Claim 1, with the additional step of "obtaining credit report data from at least one remote credit bureau terminal device."

Defendants now seek summary judgment that the '427 Patent is invalid based on a recent Federal Circuit decision.

**LEGAL STANDARD**

Claims of an issued United States patent are presumed valid. 35 U.S.C. § 282. "A party seeking to establish that particular claims are invalid must overcome the presumption of validity in 35 U.S.C. § 282 by clear and convincing evidence." *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1067 (Fed. Cir. 2003). "Although an exact definition is elusive, 'clear and convincing evidence' has been described as evidence that 'place[s] in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable.'" *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1359 n.5 (Fed. Cir. 2007) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)). In conducting an invalidity analysis, each claim must be examined individually.

## ANALYSIS

Defendants argue that the '427 Patent is invalid because it fails to meet the patentability test set forth in *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008).  The Court agrees.

## 1.   APPLICABLE LAW

The patent statute provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  35 U.S.C. § 101.  Whether a claim is patentable under Section 101 is a "threshold inquiry," and "any claim of an application failing the requirements of § 101 must be rejected even if it meets all of the other legal requirements of patentability."  *Bilski*, 545 F.3d at 950.

Courts have used varying standards in determining whether a claimed 'process' is patentable under Section 101.  In *Bilski*, decided on October 30, 2008, the Federal Circuit clarified the appropriate standard to apply in determining whether a 'process' is patentable under Section 101.  The court determined that "the proper inquiry under § 101 is . . . whether the claim meets the machine-or-transformation test."  *Bilski*, 545 F.3d at 961.  The court also reviewed and rejected other tests, such as the "useful, concrete and tangible result" test and the "technological arts" test, finding the tests "no longer valid" and holding that aspects of earlier decisions relying on those tests "should no longer be relied on."  *Id.* at 960-61.

"The machine-or-transformation test is a two-branched inquiry; an applicant may show that a process claim satisfies § 101 either by showing that his claim is tied to a particular machine, or by showing that his claim transforms an article."  *Bilski*, 545 F.3d at 961.  The court explained that two considerations were important to analysis under the machine-or-transformation test.  First, "the use of a specific machine or transformation of an article must impose meaningful limits on the claim's scope to impart patent-eligibility."  *Id.*  Second, "the involvement of the machine or transformation in the claimed process must not merely be

insignificant extra-solution activity." *Id.* at 962.

2.      **PATENTABILITY OF THE '427 PATENT UNDER *BILSKI***

Because DealerTrack appears to concede that the claims of the '427 Patent do not meet the "transformation" prong of the *Bilski* test, the Court applies only the "machine" prong of the test. *See Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1309 (Fed. Cir. 2006) (summary judgment is proper where a patentee "fail[s] to set forth any argument or evidence" in response to an accused infringer's motion for summary judgment); *USA Petroleum Co. v. Atlantic Richfield Co.*, 13 F.3d 1276, 1284 (9th Cir. 1994) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived . . . .").

*Bilski* did not apply the "machine or apparatus" prong of the test, and the Federal Circuit opted to "leave to future cases the elaboration of the precise contours of machine implementation, as well as the answers to particular questions, such as whether or when recitation of a computer suffices to tie a process claim to a particular machine." *Bilski*, 545 F.3d at 962. The court declined to adopt a "broad exclusion over software or any other such category of subject matter beyond the exclusion of claims drawn to fundamental principles set forth by the Supreme Court." *Id.* at 960 n.23. Cases decided before *Bilski* have rejected the broad argument that "a programmed general purpose computer could never be viewed as patentable subject matter under [Section] 101," as "a general purpose computer in effect becomes a special purpose computer once it is programmed to perform particular functions pursuant to instructions from program software." *In re Alappat*, 33 F.3d 1526, 1545 (Fed. Cir. 1994). In rejecting a claimed method for programming a general purpose computer to convert binary-coded decimal numerals into pure binary numerals, the Supreme Court noted that its holding did not preclude "a patent for any program servicing a computer." *Gottschalk v. Benson*, 409 U.S. 63, 71 (1972).

In the short time since *Bilski* was decided, the Board of Patent Appeals and Interferences ("BPAI") has rendered several decisions analyzing whether methods claiming the assistance of computers and communications networks are sufficiently tied to particular machines to satisfy

the "machine" prong of the *Bilski* test.  Several of those decisions hold that claims reciting the use of general purpose processors or computers do not satisfy the test.  *See, e.g.*, *Ex parte Gutta*, No. 2008-3000 at 5-6 (BPAI Jan. 15, 2009) (rejecting under Section 101 a claim reciting "a computerized method performed by a data processor"); *Ex Parte Nawathe*, No. 2007-3360, 2009 WL 327520, *4 (BPAI Feb. 9, 2009) (rejecting under Section 101 a claim reciting a "computerized method" of inputting and representing XML documents as insufficiently tied to "a particular computer specifically programmed for executing the steps of the claimed method"); *Ex Parte Cornea-Hasegan*, No. 2008-4742 at 9-10 (BPAI Jan. 13, 2009) (rejecting under Section 101 a claimed method for predicting results of mathematical operations, finding that "[t]he recitation of a 'processor' performing various functions is nothing more than a general purpose computer that has been programmed in an unspecified manner to implement the functional steps recited in the claims").  More recently, the Northern District of California invalidated a patent claiming a method for detecting fraud in a credit card transaction between a consumer and a merchant over the Internet, finding that the process failed the "machine" prong of *Bilski*.  In *Cybersource Corp. v. Retail Decisions, Inc.*, 2009 U.S. Dist. LEXIS 26056, at *20-21 (N.D. Cal. Mar. 26, 2009), Judge Marilyn Patel rejected the plaintiff's argument that the claim's recitation of fraud detection "over the Internet" required the use of a particular machine, finding that the Internet instead "is a network of millions of individual machines."

Here, DealerTrack argues that the asserted claims of the '427 Patent are tied to a central processor "consisting of a specially programmed computer hardware and database," a "remote application entry and display device," and a "remote funding source terminal device."  (Opp'n 15:20-21; 16:8-9.)  The '427 Patent does not specify how the computer hardware and database are "specially programmed" to perform the steps claimed in the patent.  In its claim construction order, this Court construed "remote application entry and display device" as "any device, e.g., personal computer or dumb terminal, remote from the central processor, for application entry and display."  (*See* Claim Construction Order at 27.)  The Court further construed "terminal device" as "any device, e.g., personal computer or dumb terminal, located at a logical or physical terminus of the system."  (*See* Claim Construction Order at 28.)  The Court finds that none of

these devices constitutes a "particular machine" within the meaning of *Bilski*. The '427 Patent does not specify precisely how the computer hardware and database are "specially programmed," and the claimed central processor is nothing more than a general purpose computer that has been programmed in some unspecified manner. Under *Bilski* and the recent decisions interpreting it, the central processor in this case cannot constitute a "particular machine." Further, this Court's claim construction order defined both the "remote application entry and data device" and "remote funding source terminal device" to include "any device," such as a personal computer or dumb terminal, and these devices clearly cannot constitute particular machines.

        None of the claims of the '427 Patent require the use of a "particular machine," and the patent is thus invalid under *Bilski*.

**3.      CONCLUSION**

        No reasonable fact-finder could conclude that Defendants have failed to prove invalidity by clear and convincing evidence, and Defendants are entitled to summary judgment of invalidity of the '427 Patent. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *State Contracting*, 346 F.3d at 1067.

**<u>DISPOSITION</u>**

        The Motion of Defendants Finance Express and RouteOne is GRANTED.

IT IS SO ORDERED.

DATED: July 7, 2009

                                        _____
                                                Andrew J. Guilford
                                        United States District Judge