**"O"**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEALERTRACK, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DAVID L. HUBER; FINANCE ) <br> EXPRESS, LLC; and JOHN DOE ) <br> DEALERS, ) <br> ) <br> Defendants. ) <br> _____ ) | CASE NO. CV 06-2335 AG (FMOx) <br><br> **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AS TO '841 PATENT** |

Defendant Finance Express, LLC ("Finance Express") has filed a Motion for Summary Judgment of Non-Infringement as to U.S. Patent 6,587,841 ("Motion"). Because the Court finds that Plaintiff DealerTrack, Inc. ("DealerTrack") has not produced any evidence that Finance Express has infringed the '841 Patent, Finance Express' Motion is GRANTED.

**BACKGROUND**

This case involves an action for patent infringement brought by DealerTrack against Finance Express and other defendants. The patents here involve a computer-aided system which

facilitates financing transactions between car dealers and lenders. The patented system communicates between multiple dealers, lenders, and credit bureaus in various remote locations over a data network. DealerTrack alleges that the accused FEX System, which uses the Internet to communicate between dealers, lenders, and credit bureaus, infringes on several of its patents, including claims 7-9, 12, 14, 16, and 17 of the '841 Patent. Each of these asserted claims includes a direct or indirect reference to a "communications medium." For example, claim 7 describes in part "[a] computer based method of operating a credit application and routing system, the system including a central processor coupled to a communications medium for communicating with remote application entry and display devices." ('841 Patent 32:55-60.) Claims 12, 14 and 16 likewise refer in part to "[a] credit application and routing system, comprising: a communications medium; central processing means, operably coupled to said communications medium" as well as further system components, including remote services and terminals, each "operably coupled to said communications medium." ('841 Patent 33:59-62; 34:48-51; 35:12-15.)

On September 27, 2008, this Court issued a claim construction order that defined "communications medium" as used in the '841 patent as "a 'network for transferring data,' not including the Internet." (Doc. No. 550 at 17-19.) On September 28, 2008, this Court granted the motion of Defendant RouteOne, LLC ("RouteOne") for summary judgment of non-infringement of all asserted claims in the '841 Patent, basing its decision in part on the fact that RouteOne's system used the Internet as its communications medium. (Doc. No. 551.)

In this Motion, Finance Express moves for summary judgment of non-infringement of all asserted claims in the '841 Patent. Finance Express asserts that "cost issues" prevented it from joining in RouteOne's similar motion. (*See* Doc. No. 693.)

**LEGAL STANDARD**

At trial, DealerTrack must establish infringement by a preponderance of the evidence. *Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.,* 424 F.3d 1293, 1310 (Fed. Cir. 2005). In

moving for summary judgment Finance Express must show "that there is an absence of evidence to support the nonmoving party's case." *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 531 (9th Cir. 2000) (quoting *Celotex Corp v. Cartrett,* 477 U.S. 317, 325 (1986)). If Finance Express satisfies this burden, DealerTrack then "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted); Fed. R. Civ. P. 56(e). If DealerTrack fails to meet this burden, summary judgment should be granted. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986); *Spectra Corp. v. Lutz,* 839 F.2d 1579, 1581 (Fed. Cir. 1988).

**ANALYSIS**

DealerTrack argues that Finance Express infringes claims 7-9, 12, 14, 16, and 17 of the '841 Patent both directly and under the doctrine of equivalents. Finance Express asserts that it cannot possibly infringe the '841 Patent, since its FEX System uses only the Internet to communicate between a central processor and dealers, lenders, and credit bureaus.

Infringement analysis is a "two step process": (1) claim construction and (2) application of the properly construed claims to the accused invention. *K-2 Corp. v. Salomon S.A.,* 191 F.3d 1356, 1362 (Fed. Cir. 1999). "To establish infringement, every limitation set forth in a patent claim must be found in an accused product or process exactly or by a substantial equivalent." *Laitram Corp. v. Rexnord, Inc.,* 939 F.2d 1533, 1535 (Fed. Cir. 1991) (internal citations omitted). Infringement of the claim cannot be found if the accused product fails to meet even a single limitation. *Id.*

Each of the asserted claims of the '841 Patent includes the term "communications medium." These claims require a "communications medium" for communicating between a central processor and various remote systems and devices including dealer terminals, lender terminals, and credit bureau terminals. In its claim construction order, this Court defined "communications medium" as "a 'network for transferring data,' not including the Internet."

(Doc. No. 550 at 19.) Applying this construction to the asserted claims, the referenced "communications medium" in all the asserted claims excludes the Internet as providing any communications between the central processor and the dealers, lenders, and credit bureaus.

Because the accused FEX System of Finance Express uses only the Internet for the communications between the central processor and the remote systems, Finance Express cannot infringe the asserted claims of the '841 Patent.

**1.    DIRECT INFRINGEMENT**

DealerTrack first argues that Finance Express infringes the asserted claims because its FEX System uses a Local Area Network ("LAN") as a "communications medium," and because under this Court's claim construction a LAN may be a "communications medium" in the asserted claims. (Doc. No. 550 at 18; *see also* '841 Patent 18:1-5.) This argument fails for at least two reasons.

First, "communications medium" in the '841 Patent refers to *external* communications between a centralized processor and various remote systems, including dealers, lenders, and credit bureaus. (*See, e.g.,* '841 Patent 32:57-59 ("communications medium for communicating with remote . . . devices").) The LAN in the FEX System is used for *internal* communications between the sub-components comprising the central processor - that is, the web server and database server. (Kaliski Dep. at 45:6-8.) The FEX System's LAN alone is not enough to be used in external communications, and so cannot be the "communications medium" referred to in the '841 Patent claims or specifications. DealerTrack's own expert Dr. Kaliski also confirmed that the only known way the FEX System can communicate between the dealers and lenders is through the Internet. (Kaliski Dep. at 50:19-22; 51:8-17.) This testimony is corroborated by DealerTrack's other witness Gary Leek, who confirmed that there is no way for a dealer to connect to the FEX application server "without being on a computer going onto the Internet." (Leek Dep. at 22:17-24.) As a matter of law, the Internet is not a communications medium as defined in the asserted claims. The FEX System's reliance on the Internet as its communications

medium mandates a finding of non-infringement.

Second, Dr. Kaliski's report and testimony shows that the LAN in the FEX System is part of the central processor. (Kaliski Dep. at 44:22-45:8.) If the LAN is part of the central processor, it cannot also be part of the communications medium. The plain meaning of the language of the asserted claims makes clear that the central processor and communications medium are separate and distinct components of the patented system.

For example, claim 14 states that the credit application and routing system comprises, among other things, "a communications medium" and "central processing means, operably coupled to said communications medium." ('841 Patent 32:55-60.) Construing the asserted claims to mean that the LAN is part of both the central processor and the communications medium would require the meaningless interpretation that the LAN be "operably coupled to" itself. This construction creates an ambiguity in the asserted claims. But "[a]ll limitations in a claim must be considered meaningful." *Lantech v. Keip Mach. Co.,* 32 F.3d 542, 546 (Fed. Cir. 1994). Here the "operably coupled to" limitation makes clear that the claims define at least two separate components: a central processor, and a communications medium. Construing this limitation otherwise would render the limitation meaningless. *See id.* ("[I]t is clear that the claims define two separate . . . structures; otherwise the recitation of the 'at least two' limitation would be meaningless").

Applying the evidence presented by both DealerTrack and Finance Express to this Court's claim construction supports the finding that the FEX System LAN is part of the central processing means. DealerTrack's alternative theory that the LAN is the "communications medium" and that, in the FEX System, the Internet provides the "coupling" functionality has no merit. For the same reasons the Internet was excluded from the term "communications medium" in this Court's claim construction, the Court finds that the Internet cannot serve the function of "operably coupling" in the FEX System. (*See* Doc. 550 at 17-19.) If anything, the Court finds it even less likely that a person of ordinary skill in the art, reading the patent in 1995, would have understood "operably coupled" to mean that the Internet provided such functionality. Regardless, DealerTrack has not presented any evidence to show that the Internet serves as a

1  "coupling" agent between the central processor and the communications medium in the FEX
2  System.  DealerTrack relies on Dr. Kaliski's declaration to support this theory.  (Kaliski Decl. at
3  ¶¶ 7-18.)  But Dr. Kaliski admits that he does not know enough about the LAN architecture of
4  the FEX System to determine whether it uses the Internet as an "operably coupling" agent.
5  (Kaliski Dep. at 112:2-10.)

6  The evidence on the record shows that the Internet is only used for external
7  communications in the FEX System.  The plain meaning of the asserted claims makes clear that
8  external communications in the patented system occur via the "communications medium."  Thus
9  the Internet provides this external communications in the FEX System, and does not "operably
10 couple" the central processor and the "communications medium" as DealerTrack proposes.  As a
11 matter of law, the FEX System cannot infringe the '841 Patent.

12

13 **2.       INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS**

14

15 Alternatively, DealerTrack argues that, even if this Court finds that Finance Express does
16 not literally infringe the '841 Patent, Finance Express still infringes based on the doctrine of
17 equivalents.  Under the doctrine of the equivalents, "a product or process that does not literally
18 infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is
19 'equivalence' between the elements of the accused product or process and the claimed elements
20 of the patented invention."  *Honeywell Int'l, Inc. v. Hamilton Sunstrand Corp.,* 523 F.3d 1304,
21 1312 (Fed. Cir. 2008) (quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17,
22 21 (1997)).  Attempting to bring the Internet back within the scope of the asserted claims,
23 DealerTrack contends that, even if the Internet was not "foreseeable technology" at the time the
24 '841 Patent was filed, it is still equivalent to either the "communications medium," or at least
25 functionally equivalent to components that "operably couple" the central processor to the
26 communications medium as described in the asserted claims.  This contention fails.
27 Finance Express correctly argues that "the concept of equivalency cannot embrace a
28 structure that is specifically excluded from the scope of the claims."  *Dolly, Inc. v. Spalding &*

*Evenflo Cos.,* 16 F.3d 394, 400 (Fed. Cir. 1994); *see also SciMed Life Sys. v. Advanced Cardiovascular Sys., Inc.,* 242 F.3d 1337, 1345 (Fed. Cir. 2001). As discussed in Section 1 of this Order, this Court's previous claim construction order held that the Internet is excluded from the scope of "communications medium" as used in the asserted claims. In that order the Court also noted that the '841 patent examiner rejected DealerTrack's attempt to amend the '841 patent to include the Internet as a communications medium. (Doc. 550 at 19.) DealerTrack cannot now recapture the Internet under the doctrine of equivalents because it has been "specifically excluded from the scope of the claims." *Dolly*, 16 F.3d at 400. Finance Express cannot infringe based on the doctrine of equivalents.

**3. CONCLUSION**

Finance Express has shown that there is an absence of evidence to support DealerTrack's case, and DealerTrack has failed to raise specific facts showing that there is a genuine issue for trial. Accordingly, summary judgment is granted for Finance Express.

**DISPOSITION**

The Motion is GRANTED.

IT IS SO ORDERED.

DATED: July 7, 2009

_____
Andrew J. Guilford
United States District Judge